IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANN-MARIE A. CAMPBELL,<br><br>        Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | CIVIL ACTION FILE NO.<br><br>1:14-CV-03341-TWT-JFK |

## FINAL REPORT AND RECOMMENDATION

The above-styled case is presently before the Court on a motion [Doc. 25] for summary judgment filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiff Ann-Marie A. Campbell ("Campbell") filed a response [Doc. 28] in opposition, and Defendant Wells Fargo filed a reply [Doc. 30]. This matter, now ripe for disposition by the Court, is before the undersigned upon referral from the District Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### I.    FACTUAL BACKGROUND

The facts, as modified herein, are taken in large part from this Court's June 29, 2015, Non-Final Report and Recommendation [Doc. 10], which was subsequently approved and adopted by the presiding District Judge [Doc. 12], and is now the law of the case.

Plaintiff Campbell acquired the property located at 195 Arbor Lake Drive, Covington, Georgia 30016 ("Property"), on June 4, 2008, funding the purchase with a Federal Housing Administration ("FHA"), thirty-year, fixed-rate mortgage loan in the principal amount of $179,074 from Colonial Bank ("Colonial"). [See DSMF ¶ 1; Doc. 1 Complaint ("Compl.") ¶¶ 6–7 and Exhibit ("Exh.") A ("Note"); Doc. 25-2 Exh. A – Affidavit of Wells Fargo's Vice President of Loan Documentation Andrea Kruse ("WF Aff.") ¶ 4; Doc. 25-2 Exh. B – Plaintiff's Response to Wells Fargo's Request for Admission ("RFA") No. 1; Doc. 25-2 Exh. C – Deposition of Anne-Marie A. Campbell ("Campbell Dep.") at 19–20].

To secure repayment of the loan, on June 4, 2008, Plaintiff simultaneously executed a security deed conveying the property to Mortgage Electronic Registration Systems, Inc. ("MERS"), and its successors and assigns, as nominee for the lender Colonial and its successors and assigns, with the power to foreclose and sell the Property if Plaintiff defaulted on her loan obligations. [DSMF ¶ 2; Compl. ¶¶ 6–7, Exh. B ("Security Deed"); RFA No. 2–3; WF Aff. ¶ 4; Campbell Dep. at 22–23, Exh. 2]. Defendant Wells Fargo was the servicer of Plaintiff Campbell's mortgage loan. [Affidavit of Ann-Marie Campbell ("Campbell Aff.") ¶ 8].

The note and security deed for Plaintiff's loan refer to federal regulations, issued by the Secretary of the Department of Housing and Urban Development ("HUD"),

which apply to mortgagees that participate in the FHA program.  [Compl. ¶ 14].

Section 6(B) of the Plaintiff's note provides:

> 6. **BORROWER'S FAILURE TO PAY**
>  . . .
> **(b) Default**
>
> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by *regulations* of the Secretary in case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. . . . [And t]his Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

[Note, ¶ 6(b) (emphasis added)].

Paragraph 9 of the security deed provides in relevant part:

> 9. Grounds for Acceleration of Debt
>
> (a) Default. Lender may, except as limited by *regulations* issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if: (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment; or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
>  . . .
> (d) Regulations of HUD Secretary. In many circumstances *regulations* issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorization acceleration or foreclosure if not permitted by regulations of the Secretary.

[Security Deed, ¶¶ 9(a), 9(d) (emphasis added)].

Plaintiff Campbell began having difficulty meeting her loan payments in late 2009 and 2010. [DSMF ¶ 6; Compl. ¶¶ 9, 22; RFA No. 6; Campbell Dep. at 28]. As a result, Wells Fargo sent notices of default to Plaintiff dated November 8, 2009, March 7, 2010, April 4, 2010, June 6, 2010, and September 19, 2010. [DSMF ¶ 7; WF Aff. ¶ 8, Exh. 4; Campbell Dep. at 27].

In addition, Wells Fargo sent Plaintiff Campbell letters dated November 23, 2009, January 22, 2010, February 22, 2010, March 25, 2010, April 22, 2010, May 24, 2010, July 23, 2010, August 23, 2010, and July 6, 2011, requesting to meet with her in order to review her financial situation and determine possible options to assist her in bringing the loan current. [DSMF ¶ 8; WF Aff. ¶ 9, Exh. 5; Campbell Dep. at 29].

On February 20, 2012, MERS assigned the security deed to Wells Fargo. [DSMF ¶ 3; Compl. ¶ 8, Exh. C ("Assignment"); RFA No. 4; WF Aff. ¶ 5; Campbell Dep. at 25, Exh. 3]. The Assignment is dated and recorded at Deed Book 2981 Page 306 Newton County records. [DSMF ¶ 4; Compl. ¶ 8; RFA No. 4; WF Aff. ¶ 5; Campbell Dep. at 25, Exh. 3]. By way of the Assignment, Wells Fargo held all interests in the Note and Security Deed. [DSMF ¶ 5; WF Aff. ¶ 7; Campbell Dep. at 25, Exh. 3].

On September 3, 2012, after an extended period of unemployment, Plaintiff Campbell entered into a Loan Modification Agreement ("Loan Modification") with

4

Wells Fargo. [DSMF ¶ 9; WF Aff. ¶ 10, Exh. 6; Campbell Dep. at 34–36; RFA No. 8]. By the summer of 2013, less than a year after having the loan modified, Plaintiff defaulted on the terms of the loan again.  [DSMF ¶ 10; Campbell Dep. at 36–37; RFA No. 10].

Wells Fargo sent Plaintiff Campbell a notice of default dated August 15, 2013, indicating that her total delinquency and amount due was $2,232 and that Plaintiff needed to bring her account current by September 19, 2013, or risk acceleration of the Note and possible foreclosure.  [DSMF ¶ 11; WF Aff. ¶ 11, Exh. 7; Campbell Dep. at 36–38; RFA No. 10].

Per Defendant, a certified letter dated August 22, 2013, was sent to Plaintiff Campbell requesting a face-to-face meeting to review her financial situation and determine possible options to assist her in bringing the loan current. [DSMF ¶ 12; WF Aff. ¶ 12, Exh. 8; Campbell Dep. at 43].  The August 22, 2013, letter was from the Home Preservation Department of Wells Fargo and stated simply:

> "Your mortgage loan is in default.  Please contact us immediately to discuss your situation.  We would like to meet with you to review your financial situation . . . ."

[WF Aff., Exh. 8].  Plaintiff admits receiving a Wells Fargo letter requesting a meeting through regular, first-class U.S. Mail on or about August 22, 2013, but disputes that Defendant sent her the same letter via certified mail.  [Pl. Resp. to DSMF ¶ 12;

5

Campbell Aff. ¶ 14, Exh. 1; Campbell Dep. at 43].  According to Plaintiff Campbell, she phoned the number provided in the August 22, 2013, letter within a day or so, and when she called Wells Fargo, she was told by representatives of Defendant that she "could apply for another loan modification, and that everything could be done over the phone." [Campbell Aff. ¶ 15; Campbell Dep. at 43–44].  Campbell testified that her home preservation specialist with Wells Fargo never asked to come out to meet with her, and she admitted, "I never invited them out because we did everything over the phone." [Campbell Dep. at 44].

According to Plaintiff, beginning in August or September 2013, after securing employment in or around July 2013, Campbell began making partial payments on the loan in the amount of approximately $600–$650 twice per month.  [Campbell Aff. ¶ 13; Campbell Dep. at 38].   Plaintiff made these partial payments in person to Wells Fargo bank tellers, and the money was held in escrow until a full monthly payment could be made and credited to her mortgage loan. [Campbell Dep. at 41–42].  Plaintiff admits that some of her partial payments were combined and later credited to her account.  [Campbell Dep. at 41].  Campbell did not have the ability to make full payment on the loan ($2,232) and bring it current by September 19, 2013.  [Campbell Dep. at 41].

AO 72A
(Rev.8/82)

On October 31, 2013, Wells Fargo sent Plaintiff a letter notifying Campbell that her mortgage was delinquent, that the mortgage account was paid through July 31, 2013, that the last full payment was made on September 5, 2013, and that the total amount needed to reinstate or bring her account current was $3,265.65. [Doc. 25-5, Exh. 13]. The October 2013 letter included information about loss mitigation, various assistance options available to Plaintiff to either avoid foreclosure or "gracefully exit" her home, and contact information for a local HUD-approved counseling agency as well as Wells Fargo's Home Preservation Department. [Id.].

On November 21, 2013, Wells Fargo sent another letter notifying Campbell that a balance of $600 was being held in an unapplied funds account on her loan, that Wells Fargo was unable to accept partial payments, and that the $600 would be held until Campbell could remit the entire balance due in the amount of $4,565.32. [Doc. 25-5, Exh. 11; Campbell Dep. at 46–47]. In response, Plaintiff contacted Wells Fargo, and the bank sent Campbell paperwork to set up an automatic draft from her checking account, either bi-weekly or monthly, since Plaintiff's paycheck was on direct deposit to Wells Fargo. [Campbell Dep. at 47–48]. Plaintiff testified that she mailed the paperwork requested but never heard back from Defendant. [Campbell Dep. at 47]. When Campbell did not see money being taken out of her checking account, she continued to make partial payments in person. [Campbell Dep. at 48].

7

At some point in or around November 2013, Plaintiff Campbell began the application process seeking a second loan modification. [DSMF ¶ 14; Campbell Dep. at 62–67]. The events surrounding Plaintiff's request for a second loan modification are unclear. Generally, Campbell contends that Wells Fargo mishandled her application and gave her contradictory information. [Campbell Dep. at 50, 56–59; Campbell Aff. ¶ 21]. "On the one hand, Defendant told me that it was reversing some of my payments because the loan had been referred for foreclosure, and on the other, that I was not required to make payments because I was being reviewed for a modification."[1] [Campbell Aff. ¶ 21]. Plaintiff testified that as of December 2013 her second loan modification request was still under review by Defendant and that she had one document dated December 17, 2013, telling her to "pay zero dollars" because Wells Fargo was still working on the modification and another letter dated the same day telling her that the home was going into foreclosure.[2] [Campbell Dep. at 50, 66].

---

[1] Plaintiff had several partial payments totaling approximately $1,700 returned to her from Defendant. [Campbell Dep. at 48–49]. According to Plaintiff, Wells Fargo sent her three checks for different amounts indicating that the bank could not accept partial payment. [Campbell Dep. at 49]. Defendant Wells Fargo sent another partial payment of $600 back to Plaintiff on December 9, 2013. [Campbell Dep. at 49].

[2] Plaintiff stated that the December 17, 2013, document telling her to "pay zero dollars" was "at home somewhere." [Campbell Dep. at 50]. This document is not part of the record, and presumably no document was ever produced.

On December 10, 2013, a final notice of default and acceleration was sent to Plaintiff by McCalla Raymer, LLC ("McCalla Raymer") on behalf of Defendant Wells Fargo.  [Compl. ¶ 10, Exh. D ("Notice")].  In the Notice, McCalla Raymer advised Campbell that her mortgage loan had been referred to the law firm for handling, that the amount of debt and sum required for reinstatement was $204,813.77 (as of that date), that Plaintiff had thirty days to dispute the debt in writing, and that the law firm was seeking to foreclose.  [Doc. 25-5 at 95].

In a certified letter dated January 2, 2014, McCalla Raymer notified Plaintiff Campbell that the Property was scheduled for foreclosure sale on the first Tuesday in February, 2014, at the Newton County Courthouse.  [Doc. 25-5 at 98–99].  McCalla Raymer also advised Plaintiff of her borrower's rights and her ability to pay the outstanding balance owed (principal and interest) within ten days from receipt of the letter.  [Doc. 25-5 at 98–99].  The means and mechanism for contacting Wells Fargo to seek to reinstate the loan, cure the default, and stop foreclosure was also explained in the letter.  [Doc. 25-5 at 99].

In a letter dated January 23, 2014, Defendant Wells Fargo advised Plaintiff that she did not meet the requirements of the loan modification program because she did not provide Defendant with all the information needed within the required time frame.  [Campbell Aff. ¶ 22; Campbell Dep. at 62].  Wells Fargo explained that, assuming

9

Plaintiff met the requirements, there were still options available to Plaintiff such as pursuing a "short sale" or a mortgage release to help her avoid a foreclosure sale. [Doc. 25-5 at 88–89].   The HUD-approved counseling contact information was also included.  [Doc. 25-5 at 89].

In a letter dated January 27, 2014, Wells Fargo's Home Preservation Specialist advised Plaintiff that Defendant was not able to help Plaintiff find a mortgage assistance solution and that the normal collections process would resume if appropriate.  [WF Aff., Exh. G].

Plaintiff Campbell never cured the default. [DSMF ¶ 15; WF Aff. ¶ 13; RFA No. 17].  The Property was eventually sold at a non-judicial foreclosure sale held on February 4, 2014, pursuant to the power of sale contained in the security deed as evidenced by the deed under power recorded on May 9, 2014.  [DSMF ¶ 16; WF Aff. ¶ 13, Exh. 9 ("Deed Under Power"); RFA No. 17].  SRP Sub, LLC ("SRP"), was the successful high bidder at the foreclosure sale.  [DSMF ¶ 17; WF Aff. ¶ 13, Exh. 9].

Following the foreclosure sale, Plaintiff remained in the home for several months.  [Campbell Dep. at 81].  After dispossessory proceedings were initiated in state court, Campbell tried to negotiate a rental agreement which would allow her to rent the Property from SRP for a period of time.   [Campbell Dep. at 83–85].  According to Plaintiff, she received word from SRP the day before she was to be

evicted that she was approved to rent the Property and remain in the house. [Campbell Dep. at 85]. Notwithstanding, the writ of possession was executed as originally scheduled while Plaintiff was at work the following day. [Campbell Dep. at 85–87].

Plaintiff filed this action on October 16, 2014, based on the Court's diversity jurisdiction. [Compl.]. The complaint alleges that Wells Fargo accelerated the loan and foreclosed on the property without complying with HUD regulations that are incorporated into Plaintiff's loan documents which constitute preconditions to acceleration and foreclosure. [Compl. ¶¶ 11–16, 43]. In particular, Plaintiff alleges that 24 C.F.R. § 203.604 requires Wells Fargo to have a "face-to-face interview" with Plaintiff or to "make a reasonable effort to arrange such a meeting" by sending at least one letter to Plaintiff by certified mail and making at least one trip to visit Plaintiff at the mortgaged property before three full monthly loan installments go unpaid. Plaintiff alleges that Wells Fargo did not meet with her face-to-face or make a reasonable attempt to have such a meeting before accelerating her loan and foreclosing. [Id. ¶¶ 17–21].

Plaintiff asserts that she is entitled to recover damages for the loss of her property (the Property and personal property), the rent monies paid to SRP, damage to her credit and reputation, and a new claim for expenses related to a hospitalization

11

Plaintiff contends was the result of stress associated with the foreclosure.[3]  [Id. ¶ 44;

Campbell Dep. at 109–19].

Plaintiff's complaint alleges five separate causes of action, all stemming from

the foreclosure of the Property and alleged violations of the HUD regulations.  Wells

Fargo's motion [Doc. 6] to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) disposed of

three of Plaintiff's causes of action and narrowed the scope of two others.[4]  [Docs. 10,

12].  Plaintiff's remaining causes of action are Count II, breach of contract, and Count

IV, wrongful foreclosure.

Additional facts will be noted as needed to address the merits of Defendant's

summary judgment motion.

---

[3] With respect to Plaintiff's theory of damages, the Court's previous decision
precludes Plaintiff from asserting that her credit and reputation were damaged in some
way that is separate and apart from the damage to her credit and reputation already
caused by her ongoing delinquency and default since 2010.  [Doc. 10 at 18].

[4] In Count I, Plaintiff sought a declaratory judgment, pursuant to O.C.G.A. § 9-
4-2, that the February 4, 2014, foreclosure sale was invalid because of Wells Fargo's
failure to comply with the "FHA" regulations incorporated into the loan.  [Id. ¶¶
33–39].  In Count III, Plaintiff alleged negligence per se and sought damages for
Defendant foreclosing without first holding a face-to-face meeting with Plaintiff or
making a reasonable attempt to do so.  [Id. ¶¶ 45–50].  In Count V, Plaintiff alleged
that the foreclosure by Wells Fargo was a "surprise" in violation of O.C.G.A. § 23-2-
54.  [Id. ¶¶ 58–63].

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (amended 2010); see also Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1249 and 1253–54 (11th Cir. 2015) (affirming summary judgment in favor of defendant-mortgagee on wrongful foreclosure claim alleging defective notice of foreclosure sale in part due to plaintiff-mortgagor's failure to establish causation).  Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one.  See Celotex, 106 S. Ct. at 2553.  The movant is not required to negate his opponent's claim.  See id.  Rather, the movant may discharge this burden

13

merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Haynes, 793 F.3d at 1249; and see Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11ᵗʰ Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11ᵗʰ Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11ᵗʰ Cir. 1990)).

The court will apply these standards in ruling on the motion for summary judgment.

## III.   DISCUSSION

As an initial matter, and as previously explained, there is no private right of action based upon the HUD regulations or the HUD Handbook. See Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130–31 (11ᵗʰ Cir. 2014) ("there is no

14

express or implied statutory right of action for HUD violations") (citing, *inter alia*, Cornelius v. Bank of Am., N.A., 2012 WL 4468746, at *16 (N.D. Ga. September 27, 2012), and Krell v. Nat. Mortg. Corp., 214 Ga. App. 503, 504, 448 S.E.2d 248, 249 (1994) ("holding violation of HUD regulations did not support a private cause of action")); see also Roberts v. Cameron-Brown Co., 556 F.2d 356, 360–61 (5th Cir. 1977) (holding that mortgagors do not have an express or implied private right of action based on the HUD Handbook which "HUD has chosen not to publish . . ., thus prohibiting it from having the force and effect of law").[5]  In addition, the Court has already determined that the HUD Handbook is not a part of the parties' contract as not incorporated into the Security Deed.[6]  [Doc. 10 at 15–16].

### A.     Breach of Contract Claim

Plaintiff's breach of contract claim is based upon Defendant's acceleration of her mortgage loan (i.e., September 3, 2012, Loan Modification) and subsequent

---

[5] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6] Plaintiff Campbell alleges that, as the loan servicer for an FHA mortgage loan, Wells Fargo has to observe the loan servicing procedural standards in the HUD Handbook which, amongst its objectives, is intended to "protect HUD's interest in the insured mortgage" by "minimizing the probability of an insured mortgage terminating in a default and foreclosure and minimizing loss to HUD where claims cannot be avoided."  [Compl. ¶¶ 22, 23].

15

foreclosure without first complying with the HUD regulations referenced in the security deed, namely, without first holding a face-to-face meeting with Plaintiff or making a reasonable attempt to do so.[7]  [Compl. ¶¶ 40–44].

"'The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'"  Norton v. Budget Rent A Car Sys., Inc., 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010) (citation omitted).

The undersigned explained in the June 29, 2015, Non-Final Report and Recommendation that pursuant to the Bates decision, the same HUD regulations relied upon by Plaintiff Campbell could present a cognizable breach of contract action in Georgia when incorporated into a security deed as conditions precedent to the power to accelerate and the power of sale.[8]  See Bates, 768 F.3d at 1130.  With respect to

---

[7] The underlying contract in this instance being the security deed containing the power of sale.  See Gordon v. S. Cent. Farm Credit, ACA, 213 Ga. App. 816, 817, 446, S.E.2d 514, 515 (1994) ("Under Georgia law, '[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.'") (quoting Druid Assoc. v. Nat. Income Realty Trust, 210 Ga. App. 684, 685, 436 S.E.2d 721, 722 (1993), superseded by statute in part, and on other grounds, O.C.G.A. § 36-60-17)).

[8] "Given the Eleventh Circuit's ruling in Bates that 'Georgia courts would hold that HUD regulations clearly referenced in a deed as conditions precedent to the power to accelerate and the power of sale could form the basis of a breach of contract action[,]' 768 F.3d at 1132, it is possible, under current law, for a debtor to bring such a post-default breach of contract action."  [Doc. 10 at 19].

breach, however, <u>Bates</u> did not decide whether a violation of the HUD regulations would amount to breach of the same contractual duty and did not opine as to whether strict compliance – as opposed to substantial compliance – with the HUD regulations was required.  <u>See</u> <u>Bates</u>, 768 F.3d at 1130 & n.6 (declining to reach issue of whether strict compliance with the HUD regulations is required); <u>and see</u> <u>Kuritzy v. Emory Univ.</u>, 294 Ga. App. 370, 371, 669 S.E.2d 179, 181 (2008) ("The Supreme Court has held that the breach must be more than de minimus and substantial compliance with the terms of the contract is all that the law requires.").  Significantly, the <u>Bates</u> court explained that, "Although we conclude that Bates [mortgagor] has established a contractual duty owed to her by Chase [mortgagee], we hold that Bates has failed to demonstrate any cognizable "resultant damages," even assuming Chase actually breached, which we do not decide."  <u>Bates</u>, 768 F.3d at 1130.

Plaintiff's security deed, the underlying contract in this instance, references HUD's regulations and "does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."  [Security Deed ¶ 9(d)].  Plaintiff points to 24 C.F.R. § 203.604(b), which requires a mortgagee to:

> have a face-to-face interview with the [borrower,] or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid.  If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt

17

to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced.

Section 203.604(b) defines "[a] reasonable attempt by the mortgagee to arrange such a meeting" as, "at a minimum[, sending] one letter . . . to the mortgagor [by] certified [mail] in addition to at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property." 24 C.F.R. § 203.604(d). Absent exception, the regulation contemplates that a reasonable attempt requires a certified letter *and* a trip to the property by the mortgagor.[9] Id.

There is no claim by Defendant that any Wells Fargo representative made a trip to the Property in an attempt to engage Plaintiff Campbell in a personal meeting to discuss ways to avoid foreclosure. For this reason, it is undisputed that Wells Fargo cannot show perfect compliance with § 203.604(d). In addition, as noted *supra*, by denying receipt of the same, Plaintiff Campbell attempts to create an issue of fact concerning whether or not Wells Fargo sent Plaintiff the August 22, 2013, letter requesting to meet with Plaintiff in person by certified mail. [DSMF ¶ 12 (citing WF Aff. ¶ 12, Exh. 8; Campbell Dep. at 43); Pl. Resp. ¶ 12 (citing Campbell Aff. ¶ 14,

---

[9] Neither of the exceptions to the mortgagee's obligation to attempt a face-to-face meeting is applicable or at issue.

18

Exh. 1)].  Implying that a certified letter was never sent by Defendant, Plaintiff avers that she "never received a certified letter from Defendant offering to meet [her] at the property."[10] [Campbell Aff. ¶ 17 ("I have no reasonable basis for concluding that Defendant sen[t] me a certified letter to this effect.")].  At the same time, Plaintiff's testimony describes the ordinary practice of Wells Fargo, which is to utilize both methods of mail when sending these types of letters.[11]  [Campbell Dep. at 37–38].  As

---

[10] According to Plaintiff Campbell, using the tracking number provided to her by Defendant, Plaintiff attempted to inquire about the certified letter and online postal service records indicated that "The Postal Service could not locate the tracking information for your request."  [Campbell Aff. ¶ 14, Exh. 1].  Defendant states in its reply brief that the United States Postal Service ("USPS") only keeps certified mail records for a two-year period from the date of mailing. [Doc. 30 at 8, Exh. A (citing http://faq.usps.com/)].

[11] Tellingly, Campbell also denied receiving a certified copy of the August 15, 2013, notice of default letter but subsequently admitted that the August 15, 2013, letter may have been sent both as certified mail and regular mail. [Campbell Dep. at 38 ("It may have [been] sent by both.")].  Concerning the August 15, 2013, letter, Plaintiff Campbell was asked and testified as follows:

Q:    Do you recall receiving this document?
A:    Yes.
Q:    Do you recall if it was sent by certified mail?
A:    No.  I think this was sent by regular mail.
Q:    And what makes you think that?
A:    They send these letters by direct – by regular mail first, and then they also sent them by certified copy.
Q:    So you think it was sent by both, or you think it was –
A:    It may have [] sent by both.
Q:    Okay.  And what does this document say?
A:    That your loan is in default, and it must be brought current by September

19

a point of emphasis, the plain language of Section 203.604(b) only requires that the mortgagee *send* a letter via certified mail as part of its reasonable attempt to arrange such a meeting; there is no express requirement under the regulation that Defendant guarantee a mortgagor's *receipt*. See 24 C.F.R. § 203.604(d). Equally important, Plaintiff Campbell has not presented evidence beyond her own statement in an effort to contradict the Affidavit of Wells Fargo's Vice President of Loan Documentation indicating that a certified letter was, in fact, sent to Plaintiff inviting a face-to-face meeting. [WF Aff. ¶ 12]. Again, Plaintiff Campbell concedes that she received the August 22, 2013, letter containing the same information by first-class U.S. Mail. [Campbell Dep. at 43–44]. Because Plaintiff's claim fails on other issues, the Court finds that even if strict compliance with § 203.604(d) is required, see Bates, 768 F.3d at 1130 & n.6, Wells Fargo's failure to perfectly comply with the HUD regulations is not determinative.

Turning next to contractual damages, Plaintiff must show that Wells Fargo's failure to comply with HUD regulations "resulted in damages that would not have occurred but for the breach" of the HUD regulations referenced in the security deed. Bates, 768 F.3d at 1133. At the Rule 12(b)(6) stage of these proceedings, the Court

---

19th, 2013 and the amount is [$]2,232.

[Campbell Dep. at 38].

determined that <u>Bates</u> was not dispositive of Plaintiff Campbell's breach of contract action (1) because the foreclosure had already occurred in this instance and (2) because <u>Bates</u> did not hold or discuss whether a breach of contract claim brought *after* foreclosure should be dismissed for failure to allege damages.[12]   [Doc. 10 at 20–21]. Observing that ultimately Plaintiff may not be able to prove damages, in an abundance of caution, the undersigned noted that allowing Plaintiff's breach of contract claim to proceed to summary judgment would permit for "further briefing on the issue of damages in a post-default breach of contract claim against a banking entity that has already foreclosed on the borrower's property." [Doc. 10 at 20–21].

Plaintiff asserts that when the Property was foreclosed upon, she sustained actual damages, including the loss of the property (i.e., the Property as well as personal property), moving expenses and rent monies paid, and medical bills for a hospitalization. [Doc. 28 at 11–12; Campbell Dep. at 109–19].  During dispossessory proceedings following the foreclosure sale, Plaintiff reportedly made one or more

---

[12] The undersigned explained that <u>Bates</u> was in a summary judgment attempted foreclosure posture and that <u>Bates</u> held that any damages allegedly caused by the alleged breach of contract during the banking entity's attempt to foreclose were "negated by the generous reinstatement provision contained in the deed." [Doc. 10 at 19–20 (citing <u>Bates</u>, 768 F.3d at 1133)].

21

payments for "rent" to the courts on SRP's behalf.[13]  Plaintiff contends that as a result of her eviction from the Property, which Defendant Wells Fargo had no part in, approximately $15,000 worth of furniture and other items of personal property were either lost or damaged.  [Campbell Dep. at 85–98].  Campbell also contends that she ended up being hospitalized due to stress (or nervous breakdown) resulting from the foreclosure. [Campbell Dep. at 109–19].

The Court finds that Plaintiff presents insufficient evidence in support of her claim that any violation of the HUD regulation, § 203.604(b), by Defendant Wells Fargo "resulted in damages that would not have occurred but for the breach."  Bates, 768 F.3d at 1133; and see Hardy v. Wells Fargo Bank, N.A., 2015 WL 11143148, at *6 (N.D. Ga. January 23, 2015); see also Rourk v. Bank of American Nat. Ass'n, 587 Fed. Appx. 597, 600 (11th Cir. 2014) (affirming summary judgment in favor of defendant mortgagee on breach of contract claim, stating that "Rourk's nonpayment is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to [her] own acts or omissions'") (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 372, 601 S.E.2d 842, 845

---

[13] Plaintiff's counsel represents that "[r]eceipts for rent payments to the courts were provided to the Defendant." [Doc. 28 at 12].

(2004)).  As Defendant suggests, Plaintiff's asserted damages are not directly related to the face-to-face meeting with Wells Fargo that Plaintiff Campbell now says was critical to avoiding foreclosure. [Doc. 30 at 5–9].  Moreover, remote and consequential damages, such as any damages flowing from the foreclosure sale and eviction (which Wells Fargo was not involved in), are not recoverable in a breach of contract claim. [Doc. 30 at 5 (citing O.C.G.A. § 13-6-8)].  Aside from the new allegation concerning a nervous breakdown and hospitalization due to stress caused by the foreclosure, the Court's previous ruling addressed any potential claim for damages based on emotional distress.  [Doc. 10 at 18].

In Hardy, the court considered a breach of contract claim raised by a homeowner-mortgagor concerning defendant-mortgagee's compliance with multiple HUD regulations incorporated into the security deed, including § 203.604(d) requiring a face-to-face interview.  See Hardy, 2015 WL 11143148, at *6.  The Hardy court opined that plaintiff's inability to prove damages was determinative and explained that it was unnecessary to decide whether the defendant's (Wells Fargo Bank, N.A.) failure to comply with the HUD regulations amounted to a breach of a contractual duty owed by Wells Fargo.  Id.  Relying on Bates, Hardy held that plaintiff had not raised a genuine issue of material fact as to whether plaintiff suffered damages caused by

23

defendant's alleged breach of HUD regulations.  Id.  Although the facts in Hardy can be distinguished, the analysis is the same here.[14]

Plaintiff contends that foreclosure could have been avoided if only Defendant had complied with § 203.604(b).  However, Campbell concedes that she never requested a personal or face-to-face meeting and never asked any Wells Fargo representative to meet with her at the Property even after receiving the August 22, 2013, letter indicating that Defendant would like to meet with her.  [Campbell Dep. at 43, 107–08].  Instead, Campbell testified that she contacted Wells Fargo by phone, was assigned a home preservation specialist, and conducted business with Defendant by phone and mail.  [Campbell Dep. at 43–44].

---

[14] Hardy described Wells Fargo's "considerable efforts to work with Plaintiff in order to bring her loan current."  Hardy, 2015 WL 11143148, at *3–4 (listing measures taken by Wells Fargo to assist plaintiff).  In this case, despite Plaintiff Campbell's claim of confusion, Defendant Wells Fargo's efforts to assist Plaintiff Campbell were nearly as extensive as in Hardy.  As in Hardy, Defendant notified Campbell on numerous occasions that her loan was in default [Campbell Dep. at 27–28], offered loss mitigation assistance to Campbell [Campbell Dep. at 31–32], entered into at least one forbearance agreement [Campbell Dep. at 31–32], provided Campbell an opportunity while unemployed in December 2011 to submit a hardship affidavit [Campbell Dep. at 33–34], provided HUD-approved counseling contact information in its correspondence [Doc. 25-5 at 89], and allowed Campbell to modify her loan to avoid foreclosure [Campbell Dep. at 35–36].

Plaintiff concedes that Wells Fargo continued to work with her over the telephone to modify the loan. [DSMF ¶ 13; Campbell Dep. at 44–45]. When asked about the supposed benefit of a face-to-face meeting, and any impact such a meeting might have had on foreclosure of the Property, Campbell initially testified that:

> We would have sat down and did [sic] the same thing that we did over the phone, talk about my finances. I would have produced the documents that I did via mail, and I guess try to figure out how we can make it work.

[Campbell Dep. at 44–45]. In hindsight, Plaintiff Campbell later testified that the outcome might have been different had she had the opportunity to meet with Defendant face-to-face because the application process for her second loan modification would have been handled "in a more timely manner" (i.e., more efficiently and more expeditiously), the confusion between the different bank departments could have been resolved, and she "would have had more time to respond or to get [herself] more help if [she] needed it."[15]  [Campbell Dep. at 101–03].

---

[15] Plaintiff further contends that if the $1,700 of returned partial payments had been credited to her mortgage account by Defendant, she would have only been one month behind on her payments. [Campbell Dep. at 49–51]. However, in making that claim, Plaintiff appears to be relying on Defendant's representation in the October 31, 2013, letter that "the date of the last full payment was 9/5/2013." [Campbell Dep. at 51; Doc. 25-5 at 91]. Immediately above the reference to the date of the last full payment, the same document states that "[t]he date through which the mortgage account is paid is 7/31/2013." [Doc. 25-5 at 91]. In other words, Plaintiff's September 2013 payment was not for (applied to) the month of September but rather for the

In response to Plaintiff Campbell's speculative claim that she might have been able to negotiate the second loan modification during a face-to-face meeting with a Wells Fargo representative, Wells Fargo correctly states that neither the HUD Regulations nor Georgia state law would have required Defendant to modify Plaintiff Campbell's loan.  See 24 C.F.R. § 203.500, et seq.; and see Ceasar v. Wells Fargo Bank, N.A., 322 Ga. App. 529, 533, 744 S.E.2d 369, 374 (2013) ("Wells Fargo had no duty to modify the [plaintiffs'] loan or Security Deed.").  Finally, Defendant Wells Fargo represents that Plaintiff did not qualify for a second loan modification in any event given that her previous loan modification occurred within the previous twenty-four (24) months.[16]  [Doc. 25-1 at 8].

In conclusion, even if a breach of contract were shown in this instance based upon an alleged failure to strictly comply with the HUD regulations, Plaintiff Campbell has not met her burden of establishing that the alleged breach "resulted in damages that

---

month of July.  According to Wells Fargo's records, Plaintiff was more than one month behind on her mortgage payments in October 2013 and the "total amount needed to reinstate or bring [the] account current [was] $3,265.65."  [Doc. 25-5 at 91]. Plaintiff also admitted numerous times that she never had the ability to cure default and reinstate the loan.  [Campbell Dep. at 55–56, 68].

[16] Plaintiff avers that she was never informed by Wells Fargo that she did not qualify for a loan modification because she had been previously granted a loan modification within a 24-month period.  [Campbell Aff. ¶ 16].

26

would not have occurred but for the breach." Bates, 768 F.3d at 1133; and see Hardy, 2015 WL 11143148, at *6. Finally, to the extent Plaintiff contends that her breach of contract claim should be allowed to proceed to jury trial even if only to pursue nominal damages, the undersigned does not find that Defendant Wells Fargo failed to substantially comply with the HUD regulations. Id.

### B.    Wrongful Foreclosure Claim

Plaintiff's wrongful foreclosure claim is based upon the same facts as her breach of contract claim. Plaintiff contends that Defendant's failure to comply with the HUD regulations referenced in the security deed constitutes an alleged breach of Wells Fargo's statutory duty under O.C.G.A. § 23-2-114, which requires that "[p]owers of sale in deeds of trust, mortgages, and other instruments . . . shall be fairly exercised."[17] [Compl. ¶¶ 51–57].    Plaintiff's alternative claim in tort for damages is the only wrongful foreclosure theory remaining.[18]

---

[17] Originally, Plaintiff sought to have the foreclosure sale set aside or, alternatively, to recover damages for the alleged violation of § 23-2-114. [Compl. ¶¶ 51–57]. However, this Court previously determined that because Plaintiff did not allege that she made the tender required to have a foreclosure sale set aside, Plaintiff is precluded from seeking equitable relief. [Doc. 10 at 27–29]. See Calhoun First Nat. Bank v. Dickens, 264 Ga. 285, 285–86, 443 S.E.2d 837, 838 (1994).

[18] The measure of damages for wrongful foreclosure under O.C.G.A. § 23-2-114 is "the amount the sale price exceeded the debt, plus interest." Dickens, 264 Ga. at

AO 72A
(Rev.8/82)

"Georgia law requires a plaintiff asserting a claim of wrongful foreclosure to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." Heritage Creek, 268 Ga. App. at 371, 601 S.E.2d at 844. "Under O.C.G.A. 23-2-114, '[p]owers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised.'" Mbigi v. Wells Fargo Home Mortg., 336 Ga. App. 316, 318, 785 S.E.2d 8, 13 (2016). "The legal duty imposed upon a foreclosing party under a power of sale is to exercise that power fairly and in good faith." Wells Fargo Bank, N.A. v. Molina-Salas, 332 Ga. App. 641, 642, 774 S.E.2d 712, 714 (2015); see also Mbigi, 336 Ga. App. at 318, 785 S.E.2d at 13 (citing Molina-Salas, 332 Ga. App. at 642, 774 S.E.2d at 714).

Concerning duty and breach of duty, the first two elements for a wrongful foreclosure claim, Wells Fargo contends that there is no actionable duty given that failure to comply with the HUD regulations does not prevent Wells Fargo from foreclosing.  [Doc. 30 at 9]; and see, e.g., Ceasar, 322 Ga. App. at 533, 744 S.E.2d at 373–74 (plaintiff borrower's claim alleging negligence was properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to allege a legal duty owed to plaintiff

286, 443 S.E.2d at 839.

28

by defendant-lender Wells Fargo).   Defendant argues that to recognize a legal duty owed to Plaintiff in this context would negate Congressional intent to not create a private right of action for HUD violations.   [Doc. 30 at 9 (citing <u>Bates</u> 768 F.3d at 1130)].[19] Regardless, Defendant Wells Fargo has a statutory duty pursuant to O.C.G.A. § 23-2-114.   Under Section 23-2-114, the question presented is whether, under the facts of this case, a reasonable jury could find that noncompliance with the HUD regulations rendered the actions of Wells Fargo in exercising its right under the power of sale unfair.[20]

---

[19] In other words, Defendant argues that there is no controlling or persuasive legal authority that calls the ability of Defendant Wells Fargo to foreclose into question notwithstanding alleged noncompliance with HUD regulations.  <u>See</u> <u>Bates</u>, 768 F.3d at 1133 & n.7.

[20] The undersigned does not agree with Defendant Wells Fargo's representation that the <u>Bates</u> ruling held that a mortgagee's claim alleging violation of HUD Regulations could *only* be brought by way of a breach of contract claim. [Doc. 25-1 at 11].  Presumably, Defendant relies on the Court's discussion of the preexisting duty rule and dictum that Chase's preexisting duty to comply with HUD Regulations was owed to the Government, not Bates.  <u>See</u> <u>Bates</u>, 768 F.3d at 1133 (finding that the preexisting duty rule was not implicated and stating that "Bates had no right to enforce this promise outside of the contract").  Although the Eleventh Circuit panel recognized that a contractual obligation to comply with the HUD Regulations existed, and although there was a wrongful attempted foreclosure issue raised in <u>Bates</u>, <u>Bates</u> did not directly speak to whether or not an alleged violation of § 203.604 could be considered *as evidence of* a wrongful foreclosure under Georgia law, § 23-2-114 – regardless of whether the HUD Regulations give rise to an independent duty in tort to a mortgagee.  <u>See</u> <u>Bates</u>, 768 F.3d at 1134.

The Court stated in its previous decision that "[w]hether Defendant Wells Fargo's alleged breach of the HUD conditions precedent resulted in an acceleration of the loan and exercise of the power of sale which was unfair or not in good faith and whether Defendant's actions caused Plaintiff to suffer damages in addition to damages caused by her own default, these are questions more appropriately argued at the summary judgment stage . . . ." [Doc. 10 at 30–31]. Plaintiff does not allege that Wells Fargo acted without good faith.[21]

A review of the case law applying O.C.G.A. § 23-2-114 indicates that a lender's failure to "fairly exercise" the power of sale is most likely to be found where pre-acceleration and foreclosure notice to the borrower-mortgagor is lacking or deficient or where there is evidence of misconduct that prevents cure or reinstatement. See, e.g., Brown v. Freedman, 222 Ga. App. 213, 214–16, 474 S.E.2d 73, 75–77 (1996) (affirming denial of summary judgment on claim for unfair exercise of the power of

---

[21] "A breach of th[e] duty to conduct the sale in good faith may arise where 'the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price.'" Lynn v. U.S. Bank Nat. Ass'n, 542 Fed. Appx. 736, 740 (11th Cir. 2013) (quoting Giordano v. Stubbs, 228 Ga. 75, 78–79, 184 S.E.2d 165, 168–69 (1971)). Plaintiff Campbell does not contend that the foreclosure sale yielded a grossly inadequate sales price or that Defendant Wells Fargo committed fraud, mistake, or misapprehension.

30

sale under O.C.G.A. § 23-2-114 where heir of the mortgagor in default attempted to determine how much was owed on the note so that she could pay it but neither defendant-seller nor defendant's attorney would provide requested information and where defendant purchased the property at less than a fifth of what it was resold for a month later, court held that, these facts taken together, "could support a finding that defendant exercised the power of sale unfairly"); see also Dickens, 264 Ga. at 286, 443 S.E.2d at 839 ("The bank's failure to provide proper notice [of foreclosure] constituted a breach of the duty to fairly exercise the power of sale created by § 23-2-114."); and see Mbigi, 336 Ga. App. at 317–21, 785 S.E.2d at 13–15 (wrongful foreclosure action based upon violation of § 23-2-114 found to state a claim where defendant allegedly failed to provide proper notice of foreclosure sale, failed to include content required by statute, namely, contact information for entity with authority to negotiate terms of mortgage within notice, and failed to provide homeowner notice before foreclosing on property).

Having the benefit of a more developed evidentiary record, the Court finds that no genuine issues of material fact exist as to whether Defendant Wells Fargo acted fairly in exercising its rights and moving for foreclosure.  The essence of Plaintiff's wrongful foreclosure claim – her strongest fairness argument – is that Wells Fargo was

31

providing her with contradictory information as late as December 2013, i.e., that she was being advised that the home would be foreclosed upon and that she was still being considered for a possible second loan modification (suggesting she was thereby prohibited from curing default). However, Plaintiff's only evidence is her own unsupported, self-serving testimony. Plaintiff testified at her deposition that the December 17, 2013, document telling her to "pay zero dollars" because the second loan modification was still under consideration was "at home somewhere." [Campbell Dep. at 50]. This document is not part of the record, and presumably no document was ever produced. According to Plaintiff, she contacted an unidentified representative of Defendant after the foreclosure sale on an unspecified date and claims that Wells Fargo was "not aware that the sale went through because we were working on the modification." [Campbell Dep. at 58, 74–75]. This claim is belied by the two January 2014 letters sent to Plaintiff by Wells Fargo indicating that the modification was not approved and that they were unable to find a mortgage assistance solution. [Doc. 25-5 at 88–90; WF Aff., Exh. G]. Campbell's statements are insufficient to overcome the documentary record. See, e.g., Chadwick v. Bank of America, N.A., 616 Fed. Appx. 944, 950 & n.3 (11th Cir. 2015) ("Chadwick's vague, self-serving testimony that he spoke with an unnamed BANA representative on some unspecified date, and the

AO 72A
(Rev.8/82)

representative told him not to send BANA any money, is insufficient to establish a genuine issue of fact as to whether BANA misrepresented its intentions to Chadwick.") (citing Scott v. Harris, 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")); and see Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (where video was found to obviously contradict plaintiff's version of facts, court accepted video's depiction of events instead of plaintiff's account when ruling on summary judgment) (citing Scott, 127 S. Ct. at 1776); and see generally, Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984) (unsupported, self-serving statements are as a rule insufficient to avoid summary judgment).  With respect to the unfair timing argument advanced by Plaintiff, namely, that by the time she was advised by Defendant Wells Fargo that her second loan modification was denied, she was unable to stop the foreclosure sale, this aspect of her claim has already been addressed and is likewise not entirely supported by the documentary evidence of record.[22]

---

[22] Plaintiff's claim alleging surprise under O.C.G.A. § 23-2-54 (Count V) based upon many of these same facts was dismissed pursuant to Rule 12(b)(6). [Campbell Aff. ¶¶ 17–21; Campbell Dep. at 61–65, 76, 110; Doc. 10 at 31–33].

Despite being in regular contact with Wells Fargo, it is also undisputed that even after obtaining employment, Plaintiff was never in a position to cure the default and reinstate the existing mortgage loan. [Compl., Exh. G ("Payment and Balance Summary through 2/1/14"); Campbell Dep. at 55–56, 68]. In fact, according to Plaintiff's own testimony, when Wells Fargo requested additional information from her in the Fall of 2013 and indicated a willingness to set up automatic draft mortgage payments on a monthy or bi-weekly schedule, Campbell never followed up to see why payments were not being drafted from her checking account. [Campbell Dep. at 47–48]. Incredibly, according to Campbell's deposition testimony, she was making partial payments in person during this same time frame but, for whatever reason, did not request to speak to any Wells Fargo representative in a management position or within the Home Preservation Department to seek clarification about the status of her second loan modification and/or foreclosure proceedings. Campbell could have pursued bankruptcy protections but elected not to go that route. [Campbell Dep. at 68]. Similarly, there is no evidence or allegation that Campbell ever contacted the HUD-approved counseling agencies at any point between October 2013 and February 2014.

Moreover, even if the Court were to find a jury question exists with respect to violation of § 23-2-114, Plaintiff has not presented admissible evidence establishing

34

a causal connection for any additional damages (beyond those caused by her own default).[23]  See Heritage Creek, 268 Ga. App. at 371, 601 S.E.2d at 844; and see Dickens, 264 Ga. at 286, 443 S.E.2d at 839 (holding that a jury question existed as to causal connection and stating that plaintiff "still needed to show a causal connection between the lack of notice and the alleged injury") (citation omitted).  In Heritage Creek, the Georgia Court of Appeals stated:

> [T]he undisputed evidence shows that Heritage Creek's alleged injury was solely attributable to its own acts or omissions both before and after the foreclosure.  Not only did Heritage Creek default on the loan payments on multiple occasions, it failed to cure the default pursuant to the terms of the loan agreement; it received the foreclosure notice, but did not bid on the property at the foreclosure sale; and it requested and was granted an opportunity to repurchase the property after the foreclosure sale, then failed to tender the purchase price required by the terms of Colonial Bank's offer to sell the property back.  Heritage Creek does not deny any of this, and it did not produce even a scintilla of evidence which shows any wrongdoing by the bank, or that any act or omission by the bank caused it to lose its equity in the eight lots which were sold in foreclosure.

Id. at 372, 601 S.E.2d at 845.  As in Heritage Creek, Plaintiff Campbell defaulted on the loan at least twice (the second time within less than a year of modification), failed to cure the default, received the foreclosure notice, and did not bid on the property at

---

[23] "A claim for wrongful exercise of the power of sale can be asserted even though a debt [was] in default."  Brown, 222 Ga. App. at 215, 474 S.E.2d at 76.

the foreclosure sale.  <u>See</u> <u>Haynes</u>, 793 F.3d at 1253 (summary judgment properly granted in favor of defendants on plaintiff's wrongful foreclosure claim challenging sufficiency of foreclosure notice under O.C.G.A. § 44-14-162.2 and explaining that "any injury the [plaintiffs] suffered is the direct result of their own default on the loan and failure to successfully negotiate and abide by more favorable terms") (applying <u>Heritage Creek</u>); <u>and see</u> <u>Rourk</u>, 587 Fed. Appx. at 600 (nonpayment fatal to wrongful foreclosure claim); <u>see also</u> <u>Howard v. Mortg. Electronic Registration Sys., Inc.</u>, 2012 WL 3582586, at *6 (N.D. Ga. August 17, 2012) (Stating in dictum, that "Failure to make the proper loan payments defeats any wrongful foreclosure claim.") (citing <u>Heritage Creek</u>, 268 Ga. App. at 371, 601 S.E.2d at 844).

Applying a different provision of the same statutory scheme, this Court previously found no causal connection to support a wrongful foreclosure claim when the homeowner had the tools at the ready to forestall foreclosure but did not.  <u>See</u> <u>Sheely v. Bank of America, N.A.</u>, 36 F. Supp. 3d 1364, 1377 (N.D. Ga. 2014) (alleged violation of the notice-of-foreclosure statute, § 44-14-162.2(a)).  The <u>Sheely</u> court stated:

> In the end, the [homeowners] did not pay their mortgage.  They received a timely notice of foreclosure.  This notice provided the contact information of the party with the authority to provide a last-minute

36

modification to forestall foreclosure. [Defendant] thus satisfied its obligations under § 44-14-162.2(a).

Id. at 1377–78.   Here, like in Sheely, it is undisputed that Plaintiff had notice of the foreclosure proceeding and understood that Wells Fargo was the entity with "full authority to modify the loan" and the ability to stop the foreclosure.  [Campbell Dep. at 73].

In short, Plaintiff's wrongful foreclosure claim fails as a matter of law for the same reasons as her breach of contract claim, namely, lack of evidence establishing a causal connection between the alleged breach of duty by Defendant Wells Fargo and the foreclosure of Plaintiff Campbell's residence.

## IV.   CONCLUSION

The Court **RESPECTFULLY RECOMMENDS** that the Defendant's Motion [Doc. 25] for Summary Judgment be **GRANTED** as to both remaining causes of action alleging breach of contract (Count II) and wrongful foreclosure (Count IV).

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014).  The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

37

**SO ORDERED THIS** 6th day of October, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE